IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

KRISTINE MARANDOLA, a citizen of Arizona,

Plaintiff,

v.

PUEBLO SUZUKI, INC., a
Colorado corporation, doing business as
ROCKY MOUNTAIN BOAT COMPANY;
LAND 'N' SEA DISTRIBUTING, INC.,
a Florida corporation, doing business as
SEACHOICE PRODUCTS

Defendants.

**COMPLAINT FOR DAMAGES**

COME NOW, the Plaintiff Kristine Marandola, by and through her attorneys, and as her Complaint against the Defendants and each of them, states and alleges as follows:

**INTRODUCTION**

1.    This is a product liability action to recover damages suffered by Plaintiff Kristine Marandola arising out of a boating incident on or about July 29, 2018 on Lake Powell, Kane County, Utah, within the boundaries of Glen Canyon National

Recreation Area, caused by the sudden failure of a carabiner connecting the anchor rope used on a recreational boat to another disabled recreational boat under tow. Kristine Marandola suffered permanent injuries in the incident.

## PARTIES

2. At all times relevant herein, Plaintiff Kristine Marandola ("Plaintiff") is, and was, a citizen of Arizona.

3. At all times relevant herein, Defendant Pueblo Suzuki, Inc. is, and was, a Colorado for-profit corporation doing business as Rocky Mountain Boat Company ("Romoboco") with its principal place of business in Colorado and is engaged in the business of marketing, distributing, selling, retailing and servicing recreational watercrafts, primarily boats and related boating equipment including but not limited to anchors, anchor ropes, watersport tow ropes, fasteners, safety equipment, and other boating equipment.

4. At all times relevant herein, Defendant Land 'N' Sea Distributing, Inc. is, and was, a Florida for-profit corporation doing business as Seachoice Products ("Seachoice") with its principal place of business in Florida and is engaged in the business of manufacturing, marketing, distributing, and selling marine hardware, including but not limited to lighting, fasteners, safety equipment, ropes, and anchors to fishing, boating and watersports enthusiasts.

## JURISDICTION AND VENUE

5. This Court has personal jurisdiction over the named Defendants because these Defendants have transacted and continue to transact business in, and with, the

State of Colorado, and because some of the actions and omissions by the named Defendants giving rise to this Complaint took place in the State of Colorado.

6. Specifically, the named Defendants have purposely availed themselves of the privileges and benefits of doing business in Colorado, actively, marketing, distributing and selling water crafts, marine hardware and related equipment, including the anchor rope and carabiner involved in the incident giving rise to this lawsuit, as well as maintaining and ongoing in-warranty or out-of-warranty servicing and repairs of such water crafts, in the State of Colorado; and have marketed and sold defective products within the State of Colorado.

7. Plaintiff claims damages in excess of $75,000 in this action, excluding costs and interest.

8. This Court is vested with jurisdiction of this action by the diversity statute, 28 U.S.C. § 1332.

9. This Court is also vested with original jurisdiction of this action by the admiralty and maritime statute, 28 U.S.C. § 1333.

10. This Court is vested with venue of this incident because a substantial portion of the events and/or omissions giving rise to Plaintiff's claim occurred in this judicial district, making venue appropriate pursuant to 28 U.S.C. § 1391(b).

11. This Court is further vested with venue of this incident because defendant Romoboco is subject to this Court's personal jurisdiction with respect to such action, making venue appropriate pursuant to 28 U.S.C. § 1391(b). On its website, Romoboco advertises and markets its products and services to the Denver, Colorado market,

stating verbatim:

> "Denver Sales & Service. Romoboco is proud to be Colorado's exclusive dealer for Supra, Moomba, Landau and Four Winns. As such, we are reaching out to serve our Denver Customers with a service plan to help our Northern friends! Looking for a new wake boat, pontoon, family runabout or cruiser? Concerned about your service dealer being too far away? We can help!"

12. Therefore, jurisdiction and venue for this case are appropriate before this Court.

## THE INCIDENT

13. On or about July 29, 2018 at approximately 6:45 PM, Plaintiff Kristine Marandola was a 44-year-old female passenger aboard a recreational boat operated by Joseph Norris and owned by Randy Paulson: a Moomba Mondo ski boat (CL 8641 GH) ("the Moomba").

14. At that time, Kristine Marandola was in the company of a group of friends who had been camping on Lake Powell on the Arizona-Utah border since the afternoon of July 27, 2018 using two boats: the Moomba and another recreational boat, a Supra SA450 ski boat (CL 2288 GH) ("the Supra") owned and operated by Fredrick Paulson.

15. During the afternoon of July 29, 2018, a few hours before the incident subject to this lawsuit, Fredrick Paulson's Supra ran out of gas.

4

16. At approximately 6:00 PM on July 29, 2018, after packing up their camp, Fredrick Paulson and Joseph Norris decided to tow the disabled Supra with the operational Moomba back to Wahweap Stateline Launch Ramp on the Arizona-Utah border where they had previously launched the Moomba and the Supra.

17. To connect the Moomba to the disabled Supra, Fredrick Paulson and Joseph Norris used an anchor rope ("the Rope") located on the Moomba. The Rope came equipped with a carabiner ("the Carabiner") at one end of the Rope.

18. The Carabiner was attached to the eye hook on the bow of the disabled Supra and the Rope connected to the Carabiner was tied to the stern of the Moomba tow boat.

19. While under tow on Lake Powell between the Utah and Arizona border, the Carabiner connecting the tow Rope to the eye hook of the disabled Supra suddenly and violently failed.

20. The recoil caused by the significant tension of the Rope propelled the Carabiner and Rope at a high velocity forward into the back of the Moomba where Plaintiff Kristine Marandola was sitting.

21. The metal Carabiner struck Kristine Marandola on the right side of her head, crushing her skull and rendering her unconscious.

22. Kristine Marandola suffered permanently disabling injuries as a result of the incident, including but not limited to skull fractures and a severe traumatic brain injury.

23. Plaintiff is informed and believes and thereupon alleges that the Rope and

5

Carabiner were designed, tested, manufactured, packaged, marketed, distributed and sold to Romoboco in new condition by Seachoice who deliberately placed the Rope and Carabiner into the stream of commerce in the United States and Colorado.

24. Plaintiff is informed and believes and thereupon alleges that the Rope and Carabiner were then re-sold in new condition to Randy Paulson by Romoboco when Randy Paulson purchased the Moomba new from Romoboco approximately two years before the incident subject to this lawsuit.

## CLAIMS FOR RELIEF AGAINST ALL DEFENDANTS

### FIRST CLAIM FOR RELIEF
(Strict Liability)

25. Plaintiff incorporates all other allegations in this complaint as if set forth herein.

26. At all times pertinent, defendants Seachoice and Romoboco were, and are, in the business of designing, testing, approving, manufacturing, marketing, distributing, selling boating equipment including but not limited to anchors, anchor ropes, watersport tow ropes, fasteners, safety equipment and other boating equipment for use in the State of Colorado and elsewhere throughout the United States.

27. At the time Defendant Seachoice sold the subject Rope and Carabiner to Romoboco and at the time Romoboco re-sold the subject Rope and Carabiner to Randy Paulson, the Rope and Carabiner were defective; and because of those defects as set forth herein, they were unreasonably dangerous to persons who might reasonably be

expected to use, or be affected by, the subject Rope and Carabiner.

28. At all times relevant herein, the subject Rope and Carabiner were unreasonably susceptible to metal deformation and sudden failure when being used in a foreseeable manner by foreseeable users of the Rope and Carabiner.

29. At all times relevant herein, the subject Carabiner lacked reasonable resistance to deformation and failure.

30. At all times relevant herein, the subject Carabiner suffered from flaws in Seachoice's manufacturing process, which left it in a defective and unreasonably dangerous condition in which it was likely to deform and suddenly fail under foreseeable use, including but not limited to when used as a towline.

31. The subject Carabiner was designed and manufactured in a manner that resulted in premature deformation, making it susceptible to sudden and violent failure when used in combination with an anchor rope and causing and contributing to the failure cause by premature metal deformation, including but not limited to when used foreseeably as a towline.

32. At the time the subject Rope and Carabiner were designed and manufactured and sold, Defendants Seachoice and Romoboco were aware that a foreseeable use of the Rope and Carabiner included their use as a towline.

33. At the time the subject Rope and Carabiner were designed and manufactured and sold, Defendants Seachoice and Romoboco were also aware that when a tensioned towline suddenly fails, either through rope breakage or carabiner or hardware failure, the rope and/or its attachments may snap back and propel the

7

rope and carabiner or attached hardware in unpredictable directions with great force, possibly resulting in severe injury or death to persons in its path.

34.   At the time the subject Rope and Carabiner were designed, manufactured, and sold, Defendant Seachoice was aware of the importance of providing adequate warnings and instructions to users of the Carabiner and Rope in light of the known risks of severe injury caused by any rapid and sudden failure of the Carabiner and/or Rope.

35.   At all relevant times herein, the subject Rope and Carabiner lacked any warnings, or adequate warnings, on the product itself and/or its packaging regarding its deficiencies and its propensity to fail under foreseeable use, including but not limited to towing, mooring, or other similar uses.

36.   At all relevant times herein, the subject Rope and Carabiner lacked any warnings, or adequate warnings, on the product itself and/or its packaging regarding the potential for severe injury or death if the subject Rope and Carabiner were foreseeably used as a towline.

37.   At all times relevant herein, the subject Rope and Carabiner lacked adequate instructions for use on the product itself and/or its packaging regarding its limitations and capacities, including but not limited to breaking strength limits and working load limit recommendations, and the potential risks of injuries for exceeding these limits, capacities, and recommendations.

38.   At all times relevant herein, Defendants Seachoice and Romoboco would have had, and had, no reason to believe that users would realize this potential danger.

39. It is believed that the Rope and Carabiner may suffer from additional unspecified defects including but not limited to manufacturing defects, design defects, failures to warn or to warn adequately, or failures to instruct or to instruct adequately that will be ascertained and confirmed upon the opportunity to conduct reasonable discovery in this lawsuit.

40. At the time of the incident described above, the subject Rope and Carabiner were being used in a manner and fashion that were foreseeable by Romoboco and by Seachoice and in a manner in which they were intended to be used, or could foreseeably be used.

41. At all relevant times herein, the subject Carabiner and Rope were defective and unreasonably dangerous because their design and their manufacturing process created a risk of harm to persons that would not ordinarily be expected and which was, and is, not outweighed by the benefits to be achieved by their design.

42. At all relevant times herein, Kristine Marandola was a person who would reasonably be expected to use, or be affected by, the subject Rope and Carabiner.

43. At the time of the incident subject to this lawsuit, the subject Carabiner suffered a catastrophic failure caused by metal deformation while under tow — a foreseeable use of the Rope and Carabiner that was also foreseen by Seachoice — causing the Rope and Carabiner to recoil with such force that when the propelled Carabiner struck Kristine Marandola in the head, it crushed her skull and rendered her comatose, resulting in serious injuries including but not limited to skull fractures and permanent traumatic brain injuries.

9

44. Defects in the subject Carabiner and Rope were a substantial factor in the subject incident that permanently injured Kristine Marandola.

45. As a direct and proximate result and consequence of the conduct and omissions of Defendants Romoboco and Seachoice and the defective and unreasonably dangerous nature of the subject Rope and Carabiner, Kristine Marandola suffered permanently disabling injuries in the incident.

46. As a direct and proximate result of Defendants, and each of their conduct, Plaintiff Kristine Marandola has incurred and will continue to incur medical and related expenses.

47. As a further proximate result of Defendants, and each of their conduct, Plaintiff Kristine Marandola has incurred, and will continue to incur, loss of earnings and future earnings capacity.

48. As a further proximate result of Defendants, and each of their wrongful conduct, Plaintiff Kristine Marandola has suffered injuries in her health, strength and activity, as well as to her nervous system and person, all of which injuries have caused, and will continue to cause, Plaintiff great physical and mental pain (injuring her mind and body): including humiliation, fear, discomfort, anxiety, loss of enjoyment of life, mental anguish, and emotional and physical distress.

49. Furthermore, Defendants, and each of them, acted with conscious disregard for the safety of Plaintiff when they were aware of the probable dangerous consequences of their conduct and they willfully failed to avoid such consequences. As such, their conduct was reckless, despicable, willful, wanton and malicious, and

therefore entitles Plaintiff Kristine Marandola to an award of punitive or exemplary damages, in an amount to be determined at trial.

WHEREFORE, Plaintiff Kristine Marandola demands judgment against the named Defendants, jointly and severally, in an amount to be determined at trial for all actual and compensatory damages suffered, in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, for all costs of this action, and for any other such further relief as this Honorable Court and/or jury may deem just and proper.

**CLAIMS FOR RELIEF AGAINST SEACHOICE ONLY**

SECOND CLAIM FOR RELIEF
(Negligence)

50. Plaintiff incorporates all other allegations in this complaint as if set forth herein.

51. At all relevant times herein, Defendant Seachoice had a duty of reasonable care to design, select, inspect, test, manufacture, assemble, equip, market, distribute, and sell the subject Carabiner and Rope so that they would be resistant to failure and to metal deformation that Seachoice knew, or should have known, would pose serious risks to consumers using the subject Rope and Carabiner.

52. At all relevant times herein, Defendant Seachoice had a duty of reasonable care to provide for the Rope and Carabiner adequate warnings and instructions for use that would be reasonably calculated to reach foreseeable users of the Rope and Carabiner about their limitations and propensity to fail under foreseeable use,

including but not limited to towing, mooring, or other similar functions, as well as the risks of serious injury or death associated with the use of the Rope and Carabiner under such circumstances.

53. Defendant Seachoice was negligent in failing to exercise reasonable care to prevent the subject Carabiner and Rope from creating an unreasonable risk of harm to persons who might reasonably be expected to use or be affected by the subject Carabiner and Rope while they were being used in a manner Defendant Seachoice could, or should, reasonably have expected.

54. As a passenger on a boat, Kristine Marandola was, and is, in that class of persons whom Defendant Seachoice should reasonably have expected to use, or be affected by, the subject Carabiner and Rope.

55. Defendant Seachoice was negligent in failing to exercise reasonable care to warn users of the subject Carabiner and Rope of the risk of harm associated with the foreseeable use of the subject Carabiner and Rope and the limitations and capacities of the Rope and Carabiner when used in certain manners that were foreseeable to Seachoice, including but not limited to when used as a towline, at the time Seachoice placed the Rope and Carabiner into the stream of commerce.

56. At the time the subject Rope and Carabiner were designed, manufactured, or sold, Defendant Seachoice was aware of the importance of the need for proper tensile, breaking limits, and/or deformation strength of the Carabiner before failure while under load because it was reasonably foreseeable the subject Rope and Carabiner would be used in the marketplace by consumers of the Rope and Carabiner to connect

boats of varying sizes and weights to anchors, piers, and to other boats.

57. At the time the subject Rope and Carabiner were designed, manufactured, or sold, Defendant Seachoice was aware that insufficient strength of the Carabiner for certain foreseeable uses, including but not limited to use as a towline, would make metal deformation and sudden failure of the Carabiner more likely and subject users and bystanders to a risk of serious injury or death as described in more detail below.

58. At the time the subject Rope and Carabiner were designed, manufactured, or sold, Defendant Seachoice was aware of the importance of the need for proper strength between the components of the Rope and Carabiner.

59. At the time the subject Rope and Carabiner were designed, manufactured, or sold, Defendant Seachoice was aware that a foreseeable use of the Rope and Carabiner included their use as a towline. Defendant Seachoice was also aware that when a tensioned towline suddenly fails, either through rope breakage or carabiner or hardware failure, the rope and/or any attached fastening metal hardware such as a carabiner may snap back and propel the rope and attached metal hardware in unpredictable directions with great force, possibly resulting in severe injury or death to persons in its path.

60. At the time the subject Rope and Carabiner were designed, manufactured, or sold, Defendant Seachoice was aware of the importance of providing adequate warnings and instructions to users of the Carabiner and Rope in light of the known risks of severe injury caused by any rapid and sudden failure of the Carabiner and/or Rope.

61. Seachoice breached its duty of due care to provide any warnings, or adequate warnings, on the product itself, and/or the product packaging about the dangers of using the subject Rope and Carabiner as a towline, and the risks of serious injury or death if the Rope and Carabiner were used as a towline.

62. Seachoice's breach of due care was a proximate cause of the failure of the Carabiner resulting in severe injuries to Kristine Marandola.

63. Seachoice's wrongful actions and omissions as described herein were a substantial factor in causing serious harm to Kristine Marandola.

64. Seachoice's breach of due care was a proximate cause of the subject incident in which Kristine Marandola suffered serious injuries.

65. As a direct and proximate result of Defendants, and each of their conduct, Plaintiff Kristine Marandola has incurred and will continue to incur medical and related expenses.

66. As a further proximate result of Defendants, and each of their conduct, Plaintiff Kristine Marandola has incurred, and will continue to incur, loss of earnings and future earnings capacity.

67. As a further proximate result of Defendants, and each of their wrongful conduct, Plaintiff Kristine Marandola has suffered injuries in her health, strength and activity, as well as to her nervous system and person, all of which injuries have caused, and will continue to cause, Plaintiff great physical and mental pain (injuring her mind and body): including humiliation, fear, discomfort, anxiety, loss of enjoyment of life, mental anguish, and emotional and physical distress.

WHEREFORE, Plaintiff Kristine Marandola demands judgment against the named Defendants, jointly and severally, in an amount to be determined at trial for all actual and compensatory damages suffered, in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, for all costs of this action, and for any other such further relief as this Honorable Court and/or jury may deem just and proper.

### THIRD CLAIM FOR RELIEF
### (Breach of Warranty)

68. Plaintiff incorporates all other allegations in this complaint as if set forth herein.

69. Defendant Seachoice knew the particular purposes for which the subject Carabiner and Rope were required and were to be used, and that purchasers and users such as Randy Paulson, Joe Norris and Fredrick Paulson would rely on Seachoice's skill or judgment in designing, testing, manufacturing, furnishing, and providing adequate warnings on, goods suitable for such purposes and uses.

70. The subject Carabiner and Rope were not fit for the particular purposes for which they were intended and for which they were, or could foreseeably be, used.

71. The subject Carabiner and Rope did not conform to the warranties, affirmations and representations made by Seachoice.

72. The defective condition of the subject Rope and Carabiner constitutes a breach by Seachoice of its express and/or implied warranties, rendering it liable for Plaintiffs' injuries and damages caused by the defects and inadequacies in the design,

manufacture of, and warnings or instructions about, the subject Rope and Carabiner.

73. At all times relevant herein, Seachoice further breached its express and/or implied warranties because the subject Carabiner and Rope were not adequately contained, packaged, and labeled in that the directions and warnings that accompanied the subject Carabiner and Rope did not adequately instruct foreseeable users on the proper use and limitations of the Rope and Carabiner in light of the fact that when used as a towline, a foreseeable use of the Rope and Carabiner, the Carabiner could deform, suddenly fail and snap with overly excessive force in unpredictable directions resulting in serious injury or death, such as what occurred in the subject incident on July 29, 2018 causing serious and permanent injuries to Kristine Marandola.

74. Defendant Seachoice's breach of express and/or implied warranties was a substantial factor and proximate cause of the injuries and losses of Plaintiff Kristine Marandola.

75. As a direct and proximate result of Defendants, and each of their conduct, Plaintiff Kristine Marandola has incurred and will continue to incur medical and related expenses.

76. As a further proximate result of Defendants, and each of their conduct, Plaintiff Kristine Marandola has incurred, and will continue to incur, loss of earnings and future earnings capacity.

77. As a further proximate result of Defendants, and each of their wrongful conduct, Plaintiff Kristine Marandola has suffered injuries in her health, strength and

activity, as well as to her nervous system and person, all of which injuries have caused, and will continue to cause, Plaintiff great physical and mental pain (injuring her mind and body): including humiliation, fear, discomfort, anxiety, loss of enjoyment of life, mental anguish, and emotional and physical distress.

WHEREFORE, Plaintiff prays for judgment against these Defendants in an amount to be determined at trial and for such other and further relief as the Court deems just and proper.

## CAUSATION & DAMAGES
(All Defendants)

78. Plaintiff incorporates all other allegations in this complaint as if set forth herein.

79. As a direct and proximate result of the defective and unreasonably dangerous condition of the subject Carabiner and Rope and the Defendants' acts and omissions set forth above, Plaintiff Kristine Marandola has incurred and seeks the following general and special damages:

(a) Pain and suffering and emotional distress, past and future;

(b) Reasonable and necessary medical, hospital, and rehabilitation care and services, nursing care and services, medication, therapy, and other expenses, past and future;

(c) Inconvenience;

(d) Loss of enjoyment of life or impairment of the quality of life;

(e) Humiliation;

(f) Fear;

(g) Anxiety;

(h) Discomfort;

(i) Mental anguish;

(j) Loss of earnings and earning capacity;

(k) Physical and mental impairment;

(l) Disfigurement and scarring;

(m) Any other losses and damages suffered by Plaintiff and to which she is legally entitled either pursuant to statute or the common law.

WHEREFORE, Plaintiff prays for and demands an award of damages to be fixed by the trier of fact in a reasonable amount. Additionally, Plaintiff asks for the costs of this action, reasonable attorney fees, all pre-judgment and post-judgment interest as provided by law, and for all such other relief to which she is legally entitled and as the Court deems appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Dated this 20th day of July, 2020.

Respectfully submitted,

By: /s/ *Elizabeth A. Hart*
      J. Todd Tenge #22088

Elizabeth A. Hart #46041
**TENGE LAW FIRM, LLC**
1738 Pearl Street, Suite 300
Boulder, Colorado 80302
303.665.2929 (tel)
303.665.8788 (fax)
Email: jttenge@tengelaw.com,
lhart@tengelaw.com


ATTORNEYS FOR PLAINTIFFS