IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:20-cv-02113-CNS-KAS

KRISTINE MARANDOLA, a citizen of Arizona,

      Plaintiff,

v.

PUEBLO SUZUKI, INC., a Colorado corporation d/b/a as Rocky Mountain Boat Company,
LAND 'N' SEA DISTRIBUTING, INC., a Florida corporation d/b/a Seachoice Products, and
ATTWOOD CORPORATION,

      Defendants.

---

## ORDER

---

      Before the Court are three motions: (1) a motion for summary judgment filed by Defendant Pueblo Suzuki, Inc., ECF No. 135; (2) a motion for summary judgment filed by Defendants Attwood Corporation and Land 'N' Sea Distributing, Inc., ECF No. 137; and (3) a Motion to Strike Plaintiff's Expert, Adam Aleksander, Ph.D., filed by Attwood Corporation and Land 'N' Sea Distributing, Inc., ECF No. 140. For the following reasons, the motions are GRANTED.

1

## I.   BACKGROUND[1]

This case arises from a boating accident at Lake Powell on July 29, 2018. ECF No. 10, ¶ 15. Plaintiff, while aboard a Moomba Mondo ski boat purchased from Rocky Mountain Boat Company (ROMOBOCO), was injured when a carabiner (the Subject Carabiner) suddenly failed and struck her in the head. *Id.*, ¶¶ 14–22, 44. Plaintiff survived, but she allegedly suffers from permanent disabilities due to the accident. *Id.*, ¶ 23.

Unfortunately for all parties, shortly after the accident, the rope and carabiner at issue were disposed of by another passenger on the boat. *See* ECF No. 61-1, ¶¶ 5, 9. On July 20, 2020, Plaintiff filed suit against ROMOBOCO, the seller of the Moomba, and later amended the complaint to add two companies believed to be involved in the manufacturing and/or distribution of the Subject Carabiner, Attwood Corporation and Land 'N' Sea Distributing, Inc. (LNS).

On May 27, 2022, Attwood and LNS moved for summary judgment arguing, among other things, that Plaintiff could not meet her burden to show that they had manufactured and/or distributed the rope and carabiner that had injured her. ECF No. 67 at 4–5. When Attwood and LNS filed their summary judgment motion, discovery had not commenced. In response, Plaintiff moved to defer consideration of the motion until after the close of discovery so that Plaintiff could fully gather evidence on product identification and manufacturer/distributor identification. The Court granted the motion, giving Plaintiff the benefit of all reasonable doubt and more time to figure out who had manufactured and

---

[1] The facts surrounding the accident are not disputed and are not material to the issue of product identification, so these facts are repeated from previous orders. ECF Nos. 79, 131.

distributed the Subject Carabiner. ECF No. 79. Discovery closed on June 23, 2023. ECF Nos. 93, 108, 114. Plaintiff then filed a motion for sanctions based on an alleged alteration of discovered evidence, ECF No. 119, which was denied as premature, ECF No. 134.[2] Defendants moved to reopen discovery for the limited purpose of deposing Plaintiff's expert witness. ECF No. 121. Magistrate Judge Starnella granted the motion. ECF No. 133. The Court then denied the motion for summary judgment, ECF No. 67, without prejudice so that the parties could file new briefing including evidence produced during discovery. ECF No. 131.

Defendants then filed new motions for summary judgment, arguing that Plaintiff still has no evidence that they manufactured or distributed the Subject Carabiner. ECF Nos. 135, 137. Attwood and LNS also filed a motion to strike Plaintiff's expert, Dr. Adam Aleksander. ECF No. 140.

## II.   UNDISPUTED MATERIAL FACTS[3]

Plaintiff argues that the Subject Carabiner constitutes a defective product. ECF No. 135, ¶ 3. The accident involved two boats and four people: a Moomba ski boat, a Supra ski boat, Joseph Norris, Amy Norris, Frederick (Rick) Paulson, and Plaintiff Kristine Marandola. *Id.*, ¶ 6. Randy Paulson, who was not present at the time of the accident, purchased the Moomba ski boat from ROMOBOCO on February 18, 2016. *Id.*, ¶ 11. Rick Paulson purchased the Supra ski boat from ROMOBOCO on July 24, 2015. *Id.*, ¶13. The

---

[2] In the minute order denying the motion for sanctions, Magistrate Judge Starnella noted that "the Motion [#119] does not 'put forth any evidence that would in any way suggest that Attwood altered the two photos at issue after the preservation duty arose.'" ECF No. 134 at 1.
[3] These facts are taken from the undisputed material facts in the two motions for summary judgment that Plaintiff admitted in her responses, ECF Nos. 143, 145.

National Park Service investigated the accident, took photographs, and prepared a report. *Id.*, ¶ 5. The photographs taken of the Subject Carabiner constitute the only available photographs of the Subject Carabiner. *Id.*, ¶ 20. The photographs do not depict any brand markings or the length of the rope attached to the Subject Carabiner. ECF No. 137, ¶ 5 at 3.[4] The NPS photographs depict what appears to be a country-of-origin stamp and a rivet where the clip attaches to the hook. *Id.* The Subject Carabiner was discarded and is thus no longer available for inspection, expert analysis, or other investigation. ECF No. 135, ¶ 18.

ROMOBOCO maintains purchase agreements, invoices, and repair orders, which show the products ROMOBOCO has sold over time to its various customers. ECF No. 135, ¶ 24.[5] None of the individual items identified in the marine purchase agreements, invoices, and repair orders to Randy or Rick Paulson are identical or visually similar to the Subject Carabiner. ECF No. 135, ¶¶ 27, 30. ROMOBOCO also maintains parts inventory and sales records that show the various Attwood brand products that ROMOBOCO has sold over the years. *Id.*, ¶ 32. Based on these records, ROMOBOCO asserts that it did not sell Attwood product No 7653 or Attwood product No 11723 to Randy Paulson or to Rick Paulson. ECF No. 135, ¶¶ 26, 29. Plaintiff disputes these conclusions, arguing that the Declaration of Randy Paulson refutes them because he stated that he only bought his boating equipment from ROMOBOCO. ECF No. 143, ¶ 26.

---

[4] Attwood and LNS repeat their numbering, mislabeling paragraph 12 on page 4 as paragraph 1. For clarity, the Court will add the page number to both sets of paragraphs 1–11. Plaintiff matched Defendants' numbering, so the Court will number paragraphs 1-11 in the response with the page number as well.

[5] Plaintiff "disputes the inferences that can be drawn from the assertion that *every* purchase made at ROMOBOCO by any of the boat occupants was specifically documented in ROMBOCO's point of sale system." ECF No. 143, ¶¶ 24–25. The Court does not consider this a dispute of the proffered fact.

Plaintiff also argues that ROMOBOCO could have "furnished" the Subject Carabiner to Randy Paulson as part of the original boat equipment on board the Moomba or the Supra. *Id.* Similarly, ROMOBOCO asserts that it did not sell Attwood product No 7653 or 11723 at any time from October 16, 2010 to October 16, 2020, nor did it sell any anchor lines to Joseph Norris, Amy Norris, or an entity affiliated with the Paulsons (Paulson enterprises, Paulson Farms, or Aleece Paulson), based on the parts inventory and sales records. ECF No. 135, ¶¶ 31, 34–35. Plaintiff disputes the conclusion, arguing that the Subject Carabiner could have come from Randy Paulson's Moomba manufacturer, Skier's Choice, Inc. ECF No. 143, ¶ 34. To support this possibility, Plaintiff argues that Attwood employee Justin Focht, who testified in his deposition that Attwood had a significant relationship with Skier's Choice, Inc., never investigated whether Attwood sold an Attwood 11723-7 to Skier's Choice. ECF No. 145, ¶ 8 at 8.

Plaintiff has retained an expert, Adam Aleksander, Ph.D., P.E. to offer product identification opinions. ECF No. 135, ¶ 21. Dr. Aleksander opines that the Subject Carabiner is either Attwood product No 11723 (spring hook) or Attwood product No 7653 (spring hook with rope).[6] *Id.*, ¶ 22. Dr. Aleksander expresses no opinion regarding who may have been the retailer of the Subject Carabiner, where or whether the Subject

---

[6] Attwood and LNS, in their motion for summary judgment, stated as an undisputed material fact that Randy Paulson purchased the Subject Carabiner from ROMOBOCO. In support, they pointed to the amended complaint, motions filed by Plaintiff, and the declaration of Oliver Shami stating that "I learned that each boat owner maintains vehemently they did not purchase any ancillary equipment for either boat anywhere *other* than from Romoboco." 69-1, ¶ 23. Plaintiff admits this statement, with the caveat that they cannot know the exact date it was purchased because it is unclear whether the Subject Carabiner was obtained as part of equipment already aboard the Moomba. ECF No.145, ¶ 8. The Court does not find that this is an undisputed material fact because it goes to ROMOBOCO's liability, not Attwood or LNS's, and ROMOBOCO disputes it.

Carabiner was purchased or acquired by the consumer, or the chain of distribution of the Subject Carabiner. *Id.*, ¶ 23. Attwood's motion added that Dr. Aleksander reviewed marketing photos of the Attwood 11723-7 and compared it to the NPS photos of the Subject Carabiner. ECF No. 137, ¶ 24. Dr. Aleksander did not analyze a physical exemplar Attwood 11723-7 in reaching his opinions. *Id.*, ¶ 25. He also did not analyze any other carabiner clips, either physical exemplars or photos, with similar utility and functionality to reach his opinions. *Id.*, ¶ 26.[7] Dr. Aleksander testified that he cannot opine whether the Attwood 11723-7 Product is the product depicted in the NPS photos to the exclusion of other products. *Id.*, ¶ 28. He offered no opinion as to whether LNS is the maker or seller of the Subject Carabiner. *Id.*, ¶ 29.

Attwood does not manufacture any lines and hooks; instead, Santong Rope private labels the anchor line and hook combinations for Attwood's sale and distribution. *Id.*, ¶ 1 at 4. Santong Rope produces the 11723-7 as a private label product. *Id.*, ¶¶ 5, 6 at 5. LNS also sells and distributes an array of marine products but sells directly to retail boat dealers, like ROMOBOCO. *Id.*, ¶ 2 at 4. Attwood attached a photograph of the Attwood 11723-7 that shows the "CHINA" country of origin stamp. *Id.*, ¶¶ 5, 6 at 5.

LNS obtains inventory of Attwood products only through purchase orders with Attwood. *Id.*, ¶ 7 at 6. LNS sells and distributes the Attwood 11723-7 under part number 23-11723-7. *Id.* There was no sale by Attwood of an Attwood 11723-7 product to ROMOBOCO at any time between 2014 and 2019. *Id.*, ¶ 8 at 6. Nor did Attwood sell an

---

[7] Plaintiff disputes this "because Dr. Aleksander did so during his deposition." However, the deposition took place after he had formed his product identification opinion, as will be discussed further below.

Attwood 11723-7 Product to any of the four distributors that sell Attwood products in the Colorado market at any time between 2014 and 2019. *Id.*, ¶ 9 at 6. The Attwood 11723-7 was not available through LNS's sales channels until August 2014. *Id.*, ¶ 10 at 6. There was no sale by LNS of an Attwood 11723-7 to ROMOBOCO at any time between 2014 and 2020. *Id.*, ¶ 11 at 6. Plaintiff admits all this, but disputes the "inference" that ROMOBOCO could not have furnished the Subject Carabiner, arguing that it could have been onboard the Moomba as original manufacturer's equipment. ECF No. 145, ¶ 8 at 8.

Attwood describes the Subject Carabiner as "a very commoditized, generic product."[8] ECF No. 137, ¶ 12. Many Attwood competitors manufacture and distribute similar rope and hook products, and some of these include a "China" country of origin stamp as depicted in the NPS photos. *Id.*, ¶ 13. Attwood conducted a review of similar products available for purchase online, and purchased several exemplar products from competitors with similar features to the NPS photo. *Id.*, ¶¶ 14–15. These competitors include Ozark Trail, Everbilt, SeaSense, Sea-Dog, Extreme Max BoatTector, and Marpac. *Id.*

### III.  LEGAL STANDARD

Summary judgment is warranted when (1) the movant shows that there is no genuine dispute as to any material fact and (2) the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he dispute is 'genuine' if the evidence is such that

---

[8] Plaintiff only disputes this statement as lacking foundation, arguing that Defendant did not establish that Mr. Focht, who made that statement, had knowledge of the competing market. However, the standard for summary judgment is whether the evidence is admissible, not whether the party relying on it has gone through the procedure to admit it. The Court presumes that, were Defendants to move to admit this evidence at trial, they would be able to lay the foundation for it. For each statement disputed only for a lack of foundation, the Court considers the statement an undisputed fact.

a reasonable jury could return a verdict for the nonmoving party." *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Wright ex rel. Tr. Co. of Kan. v. Abbott Lab'ys, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (quotations omitted)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *see also Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).

"To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 876 (10th Cir. 2004). The factual record and reasonable inferences must be construed in the light most favorable to the nonmoving party. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). The moving party bears "the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler*, 144 F.3d at 670–71. If met, "the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* at 671 (citations and quotations omitted).

Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson*, 477 U.S. at 251–52. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted).

### B.  FEDERAL RULE OF EVIDENCE 702

Federal Rule of Evidence 702 allows expert testimony if the proponent of the expert "demonstrates to the court that it is more likely than not" that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702 "imposes on a district court a gatekeeper obligation to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003). Where, as here, a party challenges the admissibility of an expert witness, Rule 702 "imposes upon the trial judge an important gate-keeping function with regard to the admissibility of expert opinions." *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1307 (10th Cir. 2015) (citation and quotation omitted). But the Court's role as a gatekeeper under *Daubert* "is not intended to serve as a replacement for the adversary system." *Id.* The Court has substantial discretion to determine "*how* to perform its gatekeeping function under *Daubert*." *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019).

The proponent of expert testimony bears the burden—by a preponderance of evidence—of showing admissibility. Fed. R. Evid. 702; *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). To evaluate admissibility, the Court engages in a "two-step analysis." *Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2022). First, the Court must decide whether the proffered expert is qualified "by knowledge, skill, experience, training, or education" to render the opinion. Fed. R. Evid. 702; *see also Roe*, 42 F.4th at 1180. Second, if the expert is sufficiently qualified, the Court must determine whether the proffered opinions are reliable. *Roe*, 42 F.4th at 1180–81. "The reliability inquiry asks whether the methodology employed by an expert is valid—that is, whether it is based on sufficient data, sound methods, and the facts of the case." *Id.* at 1181 (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)). The Court also evaluates whether the expert reliably applied the methodology to the facts of the case. *Id.*

## IV.  ANALYSIS

### A.  Motion to Strike Plaintiff's Expert, Dr. Adam Aleksander

Attwood and LNS move to strike Plaintiff's expert, Dr. Aleksander, because his product identification opinion is unreliable.[9] Dr. Aleksander concludes in his report that the Subject Carabiner is "one and the same product" as the Attwood 11723-7. However, Attwood and LNS argue that his opinions are not scientific or reliable because he did not consider any alternative products in reaching his conclusion. The Court agrees.

_____

[9] This motion was untimely filed, and Defendants should have moved to file out of time in accordance with the Court's practice standards. The practice standards are not discretionary and parties are required to follow them. However, good cause exists to consider the motion, and there is no prejudice to Plaintiff because the deposition occurred late and there was no trial date, so the Court will consider this motion on the merits.

Specifically, Attwood and LNS note the following deficiencies:

> Dr. Aleksander (1) did no significant work until late 2023; (2) did not do *any* research of the U.S. market to determine whether another distributor sells a product that matches the Subject Carabiner Clip, (3) was not given any research regarding other products, and (4) did not consider any product research of the U.S. market to reach his conclusions.

ECF No. 140 at 3.

Primarily, Attwood and LNS challenge the reliability of Dr. Aleksander's method because he failed to consider obvious alternative distributors of the Subject Carabiner. The advisory committee notes to Fed. R. Ev. 702 indicate that courts use a variety of factors to determine reliability, including "[w]hether the expert has adequately accounted for obvious alternative explanations." Fed. R. Ev. 702 advisory committee's note to 2000 amendment; *see also Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir. 1994); *Hirchak v. W.W. Grainger, Inc.* 980 F.3d 605, 609 (8th Cir. 2020) (excluding product-identification expert who failed to consider obvious alternative distributors of an allegedly defective sling); *Packgen v. Berry Plastics Corp.*, 847 F.3d 80, 87 (1st Cir. 2017) ("An expert should adequately account for obvious alternative explanations." (alterations omitted)). "Coming to a firm conclusion first and then doing research to support it is the antithesis of this [scientific] method." *Claar*, 29 F.3d at 502–03.

Dr. Aleksander's opinion, as he testified to it in his deposition, is that "the characteristics of the photograph of product from NFS are substantially the same as the exemplar photographs in the Attwood products" and that "it's reasonable to conclude that it was the same product." ECF No. 140-B at 119:12–121:6. Dr. Aleksander came to his opinion based on a comparison of a photograph of the Attwood 11723-7 and the Subject

Carabiner. *Id.* at 62:16–22. In his report, he opined that both hooks were "formed of a single piece of metal," the "snap is a formed sheet metal part with a hole for a rivet attachment," the "rivet is of the same size and configuration," and the steel rod "includes an integral U-shaped eye." ECF No. 140, Exhibit A at 3. However, he also identified key differences between the Subject Carabiner and the Attwood 11723-7: the spring clip on the Subject Carabiner has a country-of-origin stamp that is in a different font and orientation than the country-of-origin stamp on the Attwood 11723-7.[10]

His opinion is not that he thinks the Subject Carabiner is the Attwood product to the exclusion of other products.[11] Similar products made by other manufacturers constitutes an obvious alternative explanation. While it is not necessary to rule out *every* possible alternative, *Claar*, 29 F.3d at 502–03, it is necessary to account for obvious alternatives. In his deposition, Dr. Aleksander testified that he did not compare any other product with the NPS photographs.[12] He also testified that he did not research the U.S. market for a product that matched the Subject Carabiner.[13] During his deposition, Defendants provided him with competitor exemplars for him to compare to the Attwood 11723-7 exemplar. When examining these, he found that one competitor product had a

---

[10] "A: The orientation is different than the NPS and the font. This looks like it has a serif-type fonts, and this is more like an Arial-type font . . . It's a different font; okay? Q: A different font between the Attwood product photographs and the NPS – photographs? A: Correct. . . . CHINA is obviously a different font if you look at it, and it's – is it located exactly the same spot? Hard to tell" ECF No. 140-B at 58:5–14; 59:10–60:3.

[11] "Q: . . . you're not giving the opinion that you think it was the Attwood product to the exclusion of other products? A: I don't know that." *Id.* at 121:3–6.

[12] "Q: Okay. Were you ever asked to compare any other product, aside from the Attwood spring hook clip product, with the photograph that are depicted in the NPS investigative photographs? A: No." *Id.* at 39:18–22.

[13] "Q: Did you do an exhaustive research of the U.S. market for a spring hook that matched the spring clip depicted in the NPS photographs? A: No." *Id.* at 33:21–24.

country-of-origin stamp with the same orientation as the Subject Carabiner.[14] He also noted that some competitor exemplars "appear comparable in most . . . characteristics" and are "very similar" to the Attwood 11723-7. *Id.* at 108:12–13; 115:20–21. The Court finds that Dr. Aleksander's opinion is not based on sufficient facts, because he failed to consider any alternative product that could have been the Subject Carabiner. Dr. Aleksander was "not in a position to differentiate between [the defendant's] product and its competitors," which makes his opinion unreliable under *Daubert*. *McAndrew v. Garlock Equipment Co.*, 537 F. Supp. 2d 731, 735 (M.D. Pa. 2008) (finding product identification opinion unreliable because expert did not examine any exemplar from a competitor, so was "not in a position to differentiate between" the defendant's product and its competitors).

Plaintiff counters that Dr. Aleksander did consider alternative products—"[d]uring his deposition." ECF No. 146 at 4. He considered similar carabiners from other manufacturers "presented to him by Attwood counsel." *Id.* However, the deposition occurred after Dr. Aleksander had formed his product identification opinion, so his "consideration" of alternative products could not have informed that opinion. And the point of Attwood counsel presenting him with alternative was that he *should have* considered other products—and, significantly, to elicit testimony that the Subject Carabiner in the NPS photographs was similar to competitors' products such that there were obvious

---

[14] "Q: Would it be fair to say, Dr. Aleksander, that the orientation of the CHINA stamp in the Marpac product is the same orientation as the stamp in the NPS photograph? A: The orientation is the same." *Id.* at 116:4–9.

alternatives. This comparison bolsters Defendants' argument that Dr. Aleksander did not exclude obvious alternatives when forming his product identification opinion.

Plaintiff also argues that "there exist no 'obvious alternatives' to the Attwood 11723-7" because "Plaintiff's counsel and her consulting expert searched the U.S. Market for the closest matches" and "the closest match to the Subject Carabiner Clip was submitted to Dr. Aleksander." ECF No. 146 at 5. However, there is no evidence supporting this assertion. The "consulting expert" is unnamed, has not submitted a report, and has no discernible qualifications, methodology, or factual basis to support the opinion that no obvious alternatives exist, so the Court refuses to accept that opinion. Additionally, Dr. Aleksander's deposition testimony refutes this statement because he clearly indicated the existence of potential alternative carabiner clips, as discussed above.

Additionally, Attwood and LNS argue that Dr. Aleksander's opinions are not based on a reliable application of his methodology to the facts, because he did not use a physical exemplar of the Attwood 11723-7 to reach his conclusions. Instead, he digitally inverted the photograph of the Attwood 11723-7 to match the orientation of NPS photograph. ECF No. 140-B at 126:23–25. The reliability of the application of this methodology is questionable; however, the Court need not address it because, as explained above, the failure to compare the photograph to other potential products makes the product identification opinion unreliable.

Finally, Attwood and LNS argue that Dr. Aleksander's supplemental report was not properly disclosed and thus should be excluded. ECF No. 140 at 14. Rule 26(a)(4) requires all disclosures under Rule 26 be in writing, signed, and served. However, the

supplemental report is not related to Dr. Aleksander's product identification opinion, and so the Court does not consider it here.

Because Dr. Aleksander's product identification opinion is simply that the Subject Carabiner could "reasonably" be the Attwood 11723-7, but not to the exclusion of other possible products, this opinion is unreliable. The Court therefore precludes Dr. Aleksander from expressing an opinion on product identification.

### B.  ROMOBOCO's Motion for Summary Judgment

ROMOBOCO argues that it did not sell, distribute, or otherwise participate in the chain of commerce of the Subject Carabiner, and that Plaintiff cannot create a triable issue of fact that it did. ECF No. 135 at 2, 9. The Court agrees that there is no evidence that ROMOBOCO participated in the chain of commerce of the Subject Carabiner, so Plaintiff did not meet her burden of proving that there is a genuine issue of material fact.

ROMOBOCO's records indicate that it (1) did not sell the Subject Carabiner to Randy Paulson, Rick Paulson, Joseph Norris, Amy Norris, or Kristine Marandola; (2) did not sell or carry any identical or visually similar carabiners during the ten-year period before the accident; and (3) did not sell any Attwood Product 11723 or 7653 to any customer at the retail level, and Attwood has not sold these products to ROMOBOCO at the wholesale level.

The only evidence that Plaintiff offers that could potentially create a triable issue of fact is Randy Paulson's Declaration, in which he attested that "I do not have a specific recollection of purchasing the above-described rope and carabiner," but "I can attest with reasonable certainty that it was purchased from ROMOBOCO because I did not purchase

any of my boating equipment for the MOOMBA from anywhere else," and that the "photos appeared to be the same rope and carabiner that I had previously maintained on the MOOMBA." ECF No. 143-2, ¶¶ 9, 12, 13. However, these statements do not create a triable issue of fact because, as ROMOBOCO convincingly argues, it can be true both that Randy Paulson only bought his boating equipment from ROMOBOCO and that ROMOBOCO did not sell the Subject Carabiner to Randy Paulson. As ROMOBOCO points out, these facts leave open other possibilities for how the Subject Carabiner ended up on the boat: most likely, a guest brought it onto the boat, or Randy Paulson may have purchased it as a piece of camping equipment. There is no evidence of when, how, or by whom the Subject Carabiner was brought onto the boat.

The Court assumes that Randy Paulson's statement that he bought all his boating equipment from ROMOBOCO is true; however, that does not make the inference, that ROMOBOCO sold him the Subject Carabiner, true. An inference is "unreasonable" if it requires "a degree of speculation and conjecture that renders [the factfinder's] findings a guess or mere possibility." *Pioneer Ctrs. Holding Co. Emp. Stock Ownership Plan & tr. V. Alerus Fin., N.A.,* 858 F.3d 1324, 1334 (10th Cir. 2017). The inference that Randy Paulson bought the Subject Carabiner from ROMOBOCO requires concluding that ROMOBOCO's records are incorrect. The unrefuted records indicate that ROMOBOCO has never sold Attwood product No 7653 or 11723-7, has not carried any identical or visually similar metal shackles, carabiners, or spring clips, and did not sell any similar carabiner to Randy Paulson or to anyone involved in the accident. The inference that ROMOBOCO sold the Subject Carabiner to Randy Paulson, despite ROMOBOCO's unrefuted records

indicating that it did not, is merely speculation, and so is not sufficient to create a triable issue of fact.

Plaintiff's only plausible theory on how ROMOBOCO could have sold the Subject Carabiner to Randy Paulson is that it was part of the package equipping the Moomba boat when Randy Paulson bought it. However, this "OEM" theory is mere speculation that does not create a triable issue of material fact. Plaintiff's response to Attwood and LNS's motion for summary judgment indicates that this theory is merely speculation: "Mr. Focht as part of his search never checked whether Attwood ever sold any similar carabiner to Skier's Choice, Inc., the manufacturer of Randy Paulson's Moomba speedboat. And *although it would not be common for this to occur*, Attwood had a significant relationship with Skier's Choice, Inc." ECF No. 145 at 15 (emphasis added). Arguing that two companies had a significant relationship is not enough to create an inference that Attwood's equipment ended up as part of Skier's Choice's speedboat, let alone a triable issue of fact. Additionally, Plaintiff raised this "OEM theory" for the first time in her response briefs.[15] Following this, Attwood reviewed its records for sales to Skier's Choice, Inc., and located no record for sale of an Attwood 11723-7 or 765L3 to Skier's Choice from 2009 to 2018. ECF No. 153-14. Because there is no evidence beyond speculation that the Subject Carabiner could have been part of the Moomba package, and no

---

[15] "[O]ur cases interpret the inclusion of new allegations in a response to a motion for summary judgment, as a potential request to amend the complaint." *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003). The Court considers this new OEM theory as a request to amend the complaint; however, such a request, at this stage in the proceedings, would be unfairly prejudicial to Defendants. *See Williams v. Cnty. of Bernalillo*, No. 06CV1242 JH/WPS, 2008 WL 11451253, at *3 (D.N.M. Sept. 19, 2008) ("It is . . . unfairly prejudicial to the defendants, when a plaintiff is allowed to allege new facts and new theories in response to a motion for summary judgment that were not alleged in the complaint."). It would also be futile, as there is no record of sale of an Attwood 11723-7 or 765L3 to Skier's Choice from 2009 to 2018.

evidence that the Subject Carabiner came from ROMOBOCO, there is no issue of material fact and the Court grants summary judgment for ROMOBOCO.

### A. Attwood and LNS's Motion for Summary Judgment

Attwood and LNS also argue that Plaintiff cannot meet her product identification burden of showing that Attwood and LNS were engaged in the business of selling the Subject Carabiner.[16] The Court agrees.

As established above, Dr. Aleksander's product identification opinion is excluded, so that is not sufficient evidence to connect the Subject Carabiner to Attwood and LNS. Additionally, there are no records of any sale by Attwood or LNS to ROMOBOCO of the Attwood 11723-7, or of any sale to Skier's Choice, Inc. to support the OEM theory, as discussed above. Because there is no evidence connecting Attwood and LNS to the manufacture or distribution of the Subject Carabiner, the Court grants their motion for summary judgment.

### V. CONCLUSION

Because Dr. Aleksander's product identification opinion is unreliable, the Court GRANTS Attwood and LNS's Motion to Strike, ECF No. 140. Additionally, because there is no evidence connecting ROMOBOCO, Attwood, or LNS to the sale, manufacture, or distribution of the Subject Carabiner beyond mere speculation, the Court GRANTS the two motions for summary judgment, ECF Nos. 135, 137. The Clerk of Court is directed to enter judgment in favor of Defendants and close this case.

---

[16] "An essential element in any product liability suit is the sale of the product by the defendant." *Borroel v. Lakeshore, Inc.*, 618 F. Supp. 354, 360 (D. Colo. 1985). "Speculative or conjectural evidence of the manufacturer's identity is not enough." *Healey v. Firestone Tire & Rubber Co.*, 87 N.Y. 2d 596, 601–02 (N.Y. 1996).

DATED this 26th day of September 2024.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge